

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00084-CR

_____

JAMIE LEE COKER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 32980-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Jamie Lee Coker was convicted of one count of intoxication manslaughter and three separate offenses of intoxication assault as a result of a vehicle collision on February 15, 2005. By September 2005, Coker and his attorney had agreed to a negotiated plea of guilty. Coker appeared in district court and waived his right to a jury trial, judicially confessed, and stipulated that he operated a motor vehicle while intoxicated and caused the death of Sonya Coker, a passenger.

The case was set for final hearing on September 29, 2005, but Coker failed to appear. It was later determined that he had absconded to Mexico because he did not want to go to prison for fifteen years. In 2011, Coker was arrested in Mexico and returned to Gregg County. His attempt to withdraw his waivers of a jury trial, the judicial confession, and the fact stipulations was denied by the trial court. The case was presented to the trial court, and Coker was convicted and sentenced to twenty years' imprisonment in this case.

Coker appeals this conviction and others resulting from this accident[1] on the grounds that the waivers of his right to a jury trial and the stipulations of evidence entered by him were involuntary and that the trial court erred in failing to reinstate the right to a jury trial and in allowing the use of his stipulations of evidence. He also complains that the trial court erred in admitting "various State's exhibits" over objections to their admissibility, including hearsay, violations of the Confrontation Clause and Fifth Amendment rights, and Texas Code of Criminal

---

[1]Coker also appeals a conviction of intoxication manslaughter resulting in a sentence of thirty years' imprisonment in our cause number 06-12-00085-CR, and three separate convictions for intoxication assault, each resulting in sentences of ten years' imprisonment, in our cause numbers 06-12-00086-CR, 06-12-00087-CR, and 06-12-00088-CR.

Appeals Article 33.22 objections. We find that the trial court was within its discretion to deny the withdrawal of Coker's waivers and stipulations. Because Coker's stipulations of evidence were effective, he waived any complaint to the admissibility of the exhibits introduced by the State. We affirm the trial court's judgment.

## I.  Facts

Monica Wallace was happily celebrating her birthday on February 15, 2005, with her parents, Bill and Lynn, and her grandmother, Martha. Nearby, at Mom's Biker Bar, Coker was "visit[ing] with some biker friends . . . [and] celebrating" his recent marriage to Sonya by guzzling a bottle of Crown Royal whiskey and taking his new wife for a twirl on the dance floor. Coker acknowledged that he and Sonya were "pretty well lit . . . " and that they were, more or less, asked to leave the bar.[2] The celebrations abruptly ended when Coker and Sonya left in Sonya's vehicle, ran a red light, and collided with the Wallace vehicle. The tragic accident killed Sonya and Martha Wallace. Monica Wallace "was rushed to emergency surgery and had to have her spleen removed," her father, Bill, sustained a "broken ankle that require[d] surgery, a broken collar bone[,] and several lacerations," and her mother, Lynn, had "a broken right ankle, broken left heel, . . . a large laceration to her right requiring stitches, [and] an [sic] bruised lung and liver."[3]

---

[2]Coker's blood alcohol content was .20.

[3]The damage to Sonya's vehicle occurred on the passenger side. Kenneth J. Gleason, the first witness attending to the scene of the accident, testified that Sonya was ejected and crushed by the vehicle, with only "[h]er feet and legs . . . out of the passenger side, underneath." Coker testified, "I believe I just had maybe a bump on the head."

A police officer's report of the accident established that Coker was driving. It stated:

On the passenger side there was blood located on the headliner of the truck near the door frame. On the body of [Sonya] Coker she had a large laceration to her forehead indicating she was the passenger. No excessive blood was on the driver[']s side and the suspect was not bleeding when I observed him at the hospital. . . .

. . . . Nurse [ ] Boaz was the RN who attended to Mr. Coker and advised me that when she was talking to him earlier he told her he was the driver of the truck. . . .

. . . . Officer Tatum asked [Coker] if he was driving. He responded that he could not lie and he was the driver. He also stated that he and her had been at Mom's bar.

Years later, Coker claimed at trial that he made such admissions to protect his wife, who he alleges was driving the truck.[4]

## II.     Coker's Flight to Mexico After Waiving his Right to a Jury Trial and Entering into Stipulations of Evidence

Before Coker's "specially set" jury trial on September 27, 2005, he decided to enter into a negotiated plea agreement with the State which set forth the agreed punishments for each charged offense. In stipulations of evidence entered on September 16, 2005, Coker "judicially confess[ed]" to the facts alleged in the State's indictment that he

did then and there operate a motor vehicle in a public place while intoxicated by not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body, or by having an alcohol concentration of at least 0.08, and did by reason of such intoxication cause the death of another,

---

[4]Coker claimed that Sonya ran a red light and caused the accident. Coker's ex-wife testified favorably for him, stating that Sonya had been driving her truck earlier in the night. Jayne Gibson, Coker's second cousin, testified that three people (all deceased at the time of trial) also believed that Sonya was driving.

4

namely, Sonya Coker, who was then and there a passenger in my motor vehicle, . . . being driven or operated by me . . . .[5]

He then entered into a written "waiver of jury trial and consent to stipulation of testimony" on the same date and appeared at a hearing where he told the trial court of his desire to waive his right to trial by jury.

On the record, Coker stated that he wanted to give up the right to trial by jury even though a jury trial had been set, that no one had forced him to waive this right, and that he believed "it would be in the best interest not to waste the Court's time and not put my mother and all the families through this." Coker added, "It did happen and it was a tragic accident. I'm very sorry for it that it happened. I agree to the terms [of the negotiated plea agreement] today." The trial court even explained, "You could never come back and ask for a jury trial in any of these cases. Do you understand that?" Coker replied, "Yes, sir."

The trial court explained the effect of the stipulations of evidence and made sure that Coker understood he had the "absolute right . . . to put the burden of proof on the State and make them" prove the indictments beyond a reasonable doubt. Coker also stated that he understood he was "giving up [his] right to have [his] lawyer cross examine witnesses who would come forward and testify under oath" and that no one had forced him to enter into the stipulations of evidence. No objections were made as the stipulations were entered into evidence.

At the end of the September 16, 2005, hearing, the trial court stated, "[T]he jury waivers are now complete. If you walk out of this courtroom and decide you don't want to plead guilty or anything of that nature, the jury waivers are now final." Again, Coker said that he understood.

---

[5]Coker filed similar stipulations of evidence and waivers of jury trial in every case appealed by him to this Court.

Then, he walked out of the courtroom, fled to Mexico "to be free," and vanished until his August 17, 2011, arrest and subsequent return to the United States.

On January 4, 2012, over six years after his jury trial waivers and stipulations were entered, Coker filed motions to withdraw them[6] on the basis that they were "coerced by his prior attorney." Coker was the only witness to testify at the hearing on his motions, and he claimed, "I didn't understand that I was giving up my rights at that moment. If I hadn't signed what I signed, the way it was put to me I would do life in prison." He explained the alleged coercion in this bizarre story:

> Q.    [By Defense Counsel] Okay. Tell us how that happened.
>
> A.    [By Coker] The whole story, [the attorney, Thad Davidson] came to my house and I thought he was coming to get me to go to jail.
>
> Q.    When was that?
>
> A.    Maybe the day before I was supposed to come up here and sign the papers. I don't remember. I think the day before.
>
> Q.    Then what happened next?
>
> A.    I went to the door, and I answered the door with my Glock 9 millimeter.
>
> Q.    Why did you do that?
>
> A.    Because I wasn't going to go to jail.
>
> Q.    Okay. What happened next?
>
> A.    He said, "Oh, you thought I was coming here to take you to jail?" I go, "Yes, sir, I did." I didn't say, "yes, sir." I called him a couple of names. But anyway, me and Thad Davidson do not get along. He was not the lawyer of

---

[6]Similar motions to withdraw were also filed and denied in each case that Coker appeals.

my choice. My mother hired him and that was -- it was my money and that's not the lawyer I wanted.

Q. Okay.

A. I wanted somebody local here in Longview. He's from Tyler. Okay. He came and he said that, and anyway, he made some comments about the pistol and this and that. And he said, "Are you going to -- you're thinking suicide?" I didn't say nothing. He said, "It's going to kill your mother to contemplate suicide."
So he basically told me how to commit suicide without my mother finding out was to tie rocks to my feet, the Glock 9 millimeter would work under the water. Nobody would find my body. He advised me of this, this way to do it.

Q. Okay. Let me stop you there just one second. Is this a period of time where you were thinking particularly rationally, or were your emotions in sort of disarray at that point?

A. I was drinking every day. You know, if you could call my daughter to the stand she would tell you –my mother is not alive now or she could tell you. I'm not sure if -- my sister didn't visit me much -- but I drank just about every day. I was just totally just -- you know, the whole -- the whole process, the whole process from the first time I went into the jail to not being able to attend my wife's funeral, just everything, everything was just eating at me.

Q. Were you thinking -- were you thinking straight during this period?

A. No, absolutely not, absolutely not.

Q. Okay. So back to Mr. Davidson coming to your house and you having the discussion about ways to commit suicide, what happened next there that affected your voluntary choice as to these waivers?

A. [Davidson] said that if I went to a jury trial I would do the rest of my life in jail. I would do life in prison.

Coker testified that Davidson did not ask the prosecution to reduce one year of the time. "He took the first offer that they gave him and he accepted it." Coker said that he "felt completely

7

hopeless" due to Davidson's actions and "just went through the motions" of agreeing to the waivers of jury trial and stipulations of evidence.

To support the statement that he did not understand the waivers, Coker also claimed that he was drunk and "did a quarter gram of methamphetamines" on the day of the September 16, 2005, hearing. Coker swore that he "wasn't thinking clearly." The trial court, which was free to reject Coker's unusual and self-serving testimony, denied the motions to withdraw the waivers of jury trial and stipulations of evidence.

### III.    Trial Court Acted Within its Discretion to Deny Withdrawal of Jury Trial Waivers

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" U.S. CONST. amend. VI. "The right of trial by jury shall remain inviolate." TEX. CONST. art. I, § 15; TEX. CODE CRIM. PROC. ANN. art. 1.12 (West 2005). "As a matter of federal constitutional law, the State must establish, on the record, a defendant's express, knowing, and intelligent waiver of jury trial." *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009).

The trial judge that presided over the hearing in which Coker expressed his desire to waive a jury trial and enter into stipulations of evidence was the same judge that presided over Coker's motions to withdraw them, and he could have determined from Coker's demeanor whether he was drunk and high on methamphetamine at the time his waivers and stipulations were entered on the record. During Coker's cross-examination at the hearing on his motions to withdraw the waivers of jury trial and stipulations of evidence, the State established that Coker could indeed face life imprisonment if he went before a jury, that his attorney had advised him of

8

the fact that he "could get more time than what was on the plea bargain," and that he accepted the negotiated plea agreement because "[t]hat's what he recommended to me." Coker said that when he waived a jury trial and entered into stipulations he "made a mistake." It appears that in 2005 Coker decided to act on the sage advice of counsel (rather than coercion)[7] that the outcome of a jury trial would likely be grim. Although Coker now believed that he had made a mistake, we find that the record from the September 16, 2005, hearing established a knowing, intelligent, and voluntary waiver.

"[O]nce the defendant validly waives his right to a jury trial, he does not have an unfettered right to reassert that right." *Id.* Instead, the defendant has the burden to show "the absence of adverse consequences" which could occur from granting the withdrawal by establishing "on the record, that his request to withdraw his jury waiver has been made sufficiently in advance of trial such that granting his request will not: (1) interfere with the orderly administration of the business of the court, (2) result in unnecessary delay or inconvenience to witnesses, or (3) prejudice the State." *Id.* at 197–98. We review the trial court's decision to deny the request to withdraw a waiver of jury trial for abuse of discretion. *Id.* at 198; *Marquez v. State*, 921 S.W.2d 217, 221 (Tex. Crim. App. 1996). A trial court abuses its discretion when it acts without reference to guiding rules and principles or, in other words, when it acts arbitrarily or capriciously. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). "If the State, the record itself, or the trial court rebuts the defendant's claim of no adverse

---

[7]Coker's brief states, "Appellant resembled a puppet sitting with the ventriloquist, spouting the lines given him by his attorney. There was nothing voluntary about it." However, Coker, being a human endowed with free will, voluntarily made the choice to submit to counsel's advice.

consequences, the trial court does not abuse its discretion in denying the motion to withdraw the waiver of jury trial." *Taylor v. State*, 255 S.W.3d 399, 401 (Tex. App.—Texarkana 2008, pet. ref'd).

Here, Coker claimed that withdrawing his waivers of a jury trial would not result in unnecessary delay or prejudice the State. We disagree. Coker had fled the country for a period of over six years after he entered into stipulations of evidence. The lapse of six years creates potential problems. The memory of witnesses, investigators, medical personnel, and other trial participants is subject to degradation over that period of time. Although the record does not establish the trial court's calendar and whether Coker's trial was set at the court's earliest convenience,[8] the trial judge might have been concerned that waiting for a special setting to try the case in front of a jury could give Coker the opportunity to make bond and abscond.

The State did not anticipate the need to further investigate or call witnesses due to Coker's entry into stipulations of evidence which he now also sought to withdraw. If the court had decided to allow the withdrawal of the stipulations, the State would have to prepare to try a seven-year-old case in front of a jury using the limited number of witnesses who still remembered the incident. If the waivers of jury trial and the stipulations of evidence were withdrawn, the State would be required to produce the actual expert witnesses who conducted the laboratory blood testing and the autopsy report. During Coker's sojourn in Mexico, the United States Supreme Court held that a scientific report may be introduced only by the testimony of the scientist who performed the test or signed the report; a substitute's testimony

---

[8]Trial to the bench was had four months after the hearing on Coker's motions to withdraw the waivers and stipulations.

10

violates the Confrontation Clause. *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2716 (2011). Over a seven-year period of time, it is possible that these scientific/technical expert witnesses made employment changes and are no longer accessible by subpoena.

Since Coker's flight, at least three witnesses which the State could potentially have called if necessary had died leading to the loss of relevant evidence, and the memories of other potential witnesses may have faded. Coker even admitted that "[b]ecause there's been a great deal of time, there may, in essence, be some -- some effect on the witnesses and the evidence, the State's case." If the court decided not to allow the withdrawal of the stipulations, the stipulations would have been sufficient to sustain Coker's convictions, and trial by jury would result in a waste of judicial resources and time expended by jurors.

We find that the trial court acted within its discretion to deny Coker's motions to withdraw his waivers of a jury trial and find that Coker was unable to meet his burden to establish that such a trial would not result in unnecessary delay or prejudice to the State. We overrule Coker's first point of error.

## IV. Trial Court Acted Within its Discretion in Disallowing Withdrawal of Stipulations of Evidence

Coker objected to the introduction of the stipulations of evidence at trial. His counsel also lodged the following objections after the State attempted to introduce offense reports penned by the Longview Police Department and the Texas Alcoholic Beverage Commission, laboratory reports from the Texas Department of Public Safety and Dallas Institute of Forensic Sciences, medical examiners' reports, and witness affidavits:

11

Specifically, Your Honor, we would object on the basis of hearsay and the denial of right of confrontation and cross-examination as to all of these documents and all the State's exhibits. Basically under the same authority that are set out in our request to withdraw the stipulations, under those authorities, and having restated those I don't see any reason to stand up here and list them all because they are set out in the motion to withdraw the stipulations. And it's the same concerns that we have. We have objections on that basis.

Further, as to all of the State's exhibits there has not been any proper predicate laid for the entry and admission of any of these documents or State's exhibits. We would object on that basis as well. . . .

. . . .

. . . . There's a further objection in that there are inculpatory statements that are allegedly to have been made by the accused, Mr. Coker, in some of the State's exhibits, and they are set out. We have a further objection as to those statements in that some of them were done while he was in custody. We believe the statements were not voluntary, therefore, they would fall under the same authority that was requested that the stipulation be withdrawn and the Court has already heard evidence on that. The Court will hear evidence that he had a head injury at the time as well.[9]

Further, there are statements that were taken that were not in compliance with 38.22 of the Code of Criminal Procedure or the Fifth Amendment of the U.S. Constitution under the Miranda authority.

The State explained that the basis for admission of these exhibits was the stipulations of evidence

containing the following language:

I do further agree in open Court that the evidence in this case may be stipulated, and I waive the appearance, confrontation and cross-examination of the witnesses, and consent to the introduction of testimony by affidavits, written statements of witnesses, and other documentary evidence in support of the Judgment of the Court.

Coker's objections were denied.

---

[9]Coker testified that "whenever they took me to the hospital I went straight to jail and they put me on suicide watch. So I must not have been injured very much."

12

Coker does not complain that the stipulations were improperly entered in any way. Instead, he argues that he signed the stipulations of evidence under "coercion and duress coming from his lawyer," and claims that he should be allowed to withdraw them. We disagree.[10]

The trial judge in this case was free to determine that Coker had not been coerced. *See Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994) ("The trial judge is sole judge of credibility of witnesses in a pretrial hearing and, absent a showing of abuse of discretion, a trial court's finding on the voluntariness of a confession will not be disturbed."). Davidson was hired counsel. Coker was free to seek new counsel if he disagreed with Davidson's approach to the case, but he chose not to seek different counsel. At the hearing in which the stipulations were confirmed to have been entered freely, Coker volunteered the statement, "It did happen and it was a tragic accident. I'm very sorry for it that it happened." Further, Coker consistently told the court that he had not been forced into entering the stipulations. It was not until after Coker fled to Mexico and was caught that he decided to recant his earlier confessions and statements and assert the argument of coercion.

"A trial court has discretion to set aside a stipulation." *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). Based on the state of the record here, we cannot find that the trial court acted arbitrarily or capriciously in denying Coker's requests to withdraw the stipulations of evidence.

---

[10]The trial court relied on stipulations entered by Coker in overruling his objections to the admitted evidence. Our decision with respect to the stipulations of evidence renders moot Coker's individual points of error related to the admissibility of the State's exhibits.

## V.    Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted:    June 18, 2013
Date Decided:      June 19, 2013

Publish