ACCEPTED
13-14-00261-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
4/10/2015 4:08:36 PM
DORIAN RAMIREZ
CLERK

## No. 13-14-261-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/10/2015 4:08:36 PM
DORIAN E. RAMIREZ
Clerk

# RICHARD VOLLICK,
# APPELLANT,

## v.

# THE STATE OF TEXAS,
# APPELLEE.

ON APPEAL FROM THE 117TH DISTRICT COURT
NUECES COUNTY, TEXAS

## BRIEF FOR THE STATE

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

Attorney for Appellee

## ORAL ARGUMENT IS REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................................ iii

STATEMENT OF FACTS ........................................................................................ 1

SUMMARY OF THE ARGUMENT ........................................................................ 3

ARGUMENT ............................................................................................................ 4

**Reply Point No. 1**
**(Responsive to Issues 1 & 2)**
**The trial court properly denied a mistrial and properly refused to allow Vollick to poll the jury without any showing that the jury had violated the Court's media instructions.** .................................................................... 4

    **I. Statement of Facts.** ................................................................................ 4
    **II. Mistrial.** ............................................................................................... 7
    **III. Prosecutorial Misconduct.** ............................................................... 7
    **IV. Refusal to Allow Polling at Trial.** ................................................... 9

**Reply Point No. 2**
**(Responsive to Issue 3)**
**The trial court did not refuse to allow Vollick's attorney to question the jury panel concerning range of punishment, nor did the trial court abuse its discretion in its own instructions concerning range of punishment.** .................................................................................................. 11

    **I. Statement of Facts.** ............................................................................. 11
    **II. Analysis.** ............................................................................................ 15

**Reply Point No. 3**
**(Responsive to Issue 4)**
**The trial court properly denied Vollick's motion for new trial based on a lack of any indication that the State presented misleading evidence at trial.** .................................................................................................................. 17

    **I. Statement of Facts.** ............................................................................. 17
    **II. Standard of Review.** .......................................................................... 21
    **III. False Testimony.** .............................................................................. 21

**IV. Judicial Notice.** .............................................................. 22

**V. Glaucoma.** ....................................................................... 22

**VI. Poor Vision.** .................................................................. 25

**VII. Materiality.** .................................................................. 26

PRAYER ....................................................................................... 27

RULE 9.4 (i) CERTIFICATION .............................................. 27

CERTIFICATE OF SERVICE ................................................. 28

# INDEX OF AUTHORITIES

## Cases

*United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392 (1976).......................... 22

*Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103 (1957). .................................... 21

*Arroyo v. State,* 117 S.W.3d 795 (Tex. Crim. App. 2003). .......................... 16

*State v. Balbi*, 89 Conn. App. 567, 874 A.2d 288 (2005)............................. 23

*Brito Carrasco v. State,* 154 S.W.3d 127 (Tex. Crim. App. 2005)............... 16

*Ex Parte Chavez*, 371 S.W.3d 200 (Tex. Crim. App. 2012). .................. 21, 22

*Coker v. State*, 405 S.W.3d 356 (Tex. App.—Texarkana 2013, no pet.)..... 16

*State v. Dahood*, 148 N.H. 723, 814 A.2d 159 (2002). ................................ 23

*Emerson v. State,* 880 S.W.2d 759 (Tex. Crim. App. 1994). ....................... 22

*Henderson v. State*, 962 S.W.2d 544 (Tex. Crim. App. 1997)........................8

*Hernandez v. State,* 116 S.W.3d 26 (Tex. Crim. App. 2003)....................... 22

*United States v. Horn*, 185 F. Supp. 2d 530 (D. Md. 2002)......................... 23

*House v. State,* 947 S.W.2d 251 (Tex. Crim. App. 1997). .......................... 8, 9

*State v. Ito*, 90 Hawai'i 225, 978 P.2d 191 (Ct. App. 1999). ....................... 23

*Ladd v. State,* 3 S.W.3d 547 (Tex. Crim. App. 1999). ..................................7

*Mays v. State*, 318 S.W.3d 368 (Tex. Crim. App. 2010)............................. 10

*McQuarrie v. State,* 380 S.W.3d 145 (Tex. Crim. App. 2012). ................... 21

*Ocon v. State*, 284 S.W.3d 880 (Tex. Crim. App. 2009)................................7

*People v. McKown*, 236 Ill. 2d 278, 924 N.E.2d 941 (2010). ...................... 24

*Plata v. State,* 926 S.W.2d 300 (Tex. Crim. App. 1996). ............................. 17

*Powell v. State*, 898 S.W.2d 821 (Tex. Crim. App. 1994). .......................... 10

*Powers v. State*, 165 S.W.3d 357 (Tex. Crim. App. 2005). ...........................8

*Ex Parte Robbins*, 360 S.W.3d 446 (Tex. Crim. App. 2011). ................. 21, 22

*Schultz v. State*, 106 Md. App. 145, 664 A.2d 60 (1995). ........................... 23

*Simon v. State*, 374 S.W.3d 550 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). .................................................................................................... 10

*Somers v. State*, 368 S.W.3d 528 (Tex. Crim. App. 2012). .......................... 22

*Thomas v. State*, 408 S.W.3d 877 (Tex. Crim. App. 2013). .......................... 16

### Statutes & Rules

Tex. R. App. P. 33.1. .................................................................................. 15

Tex. R. Evid. 103. .......................................................................................9

NO. 13-14-261-CR

RICHARD VOLLICK,       §      COURT OF APPEALS
        Appellant,         §
                       §
V.                             §       FOR THE THIRTEENTH
                       §
THE STATE OF TEXAS,        §
        Appellee.         §       DISTRICT OF TEXAS

**BRIEF FOR THE STATE**

TO THE HONORABLE COURT OF APPEALS:

**STATEMENT OF FACTS**

Katrina Parr, a ferry deck hand, testified that, on the night in question and after Vollick exited her ferry, she saw him hit one sign, then travel some twelve car lengths along the median without slowing down and hit a second sign before coming to a stop. (RR vol. 4, pp. 32-33, 37) Parr described Vollick's facial expression and his eyes as droopy and said that his mouth was open. (RR vol. 4, p. 33) Parr testified that Vollick was swerving when he came onto the ferry and that he was not driving normally. (RR vol. 4, p. 34) Parr described Vollick's speech as slurred and slow and his movements as sluggish. (RR vol. 4, pp. 39, 54) Parr testified that, after the accident, Vollick attempted to light a cigarette even though there was gasoline on the ground around him, and that she had to ask him twice not to do that. (RR vol. 4, pp. 39-40, 50) After the accident, Vollick admitted to Parr that he

"did it again." (RR vol. 4, p. 46)  Parr testified to her opinion that Vollick was under the influence of something based on his behavior. (RR vol. 4, pp. 53-54)

Patrick Brady testified that he also witnessed Vollick hit one sign, and then continue to drive along the median and speed up until he hit another sign. (RR vol. 4, pp. 63-65)  Brady also saw Vollick smoking a cigarette in the middle of the gasoline and even attempt to throw his cigarette onto the gas-filled ground.  (RR vol. 4, pp. 68-69)  Brady also believed that Vollick was under the influence of something based on his behavior.  (RR vol. 4, p. 75)

Police Officer Joseph Rivas testified that he found a 12-ounce beer bottle in the back of Vollick's car that was cold to the touch and had some liquid still in it.  (RR vol. 4, pp. 108-10)  When Officer Rivas asked if Vollick "had anything to drink tonight," Vollick admitted that he had four or five twelve-ounce beers.  (RR vol. 4, p. 123)  Officer Rivas described Vollick's eyes as bloodshot, his speech as slurred and mumbling, his thought process as "all over the place," and observed that he had difficulty getting his driver's license out.  (RR vol. 4, pp. 124-25)  Officer Rivas also testified that Vollick was swaying and could not follow directions.  (RR vol. 4, p. 137)  Officer Rivas testified that Vollick failed to do the walk-and-turn test

correctly. (RR vol. 4, p. 139) Officer Rivas testified to his opinion that Vollick lost the normal use of his mental and physical faculties because of his performance of the field sobriety tests, as well as the circumstances of the crash, Vollick's appearance and the smell of alcohol on his breath. (RR vol. 4, p. 143) While waiting at the scene, Vollick stated to Officer Rivas, "The more I sit, the more I win, trust me." (RR vol. 4, p. 157)

Police Officer Brett Boyer, also present at the scene, testified to his opinion that Vollick was intoxicated based on his movements, how he spoke, and how he smelled. (RR vol. 5, p. 15)

## SUMMARY OF THE ARGUMENT

*Reply Point No. 1 (Responsive to Issues 1 & 2)* -- The trial court properly denied a mistrial because Vollick failed to show any Rules violation by the District Attorney or that his conduct prejudiced Vollick in any way. The trial court also acted within its discretion in refused to allow Vollick to poll the jury without any showing that the jury had violated its media instructions.

*Reply Point No. 2 (Responsive to Issue 3)* -- The trial court did not refuse to allow Vollick's attorney to question the jury panel concerning range of punishment, nor did the trial court abuse its discretion in its own instructions concerning the possible ranges of punishment, which were

3

accurate and which Vollick's trial attorney affirmatively agreed for the trial court to give to the jury.

*Reply Point No. 3 (Responsive to Issue 4)* -- The trial court properly denied Vollick's motion for new trial based on a lack of any indication that the State presented misleading evidence at trial. Specifically, Vollick failed to show that the HGN test was not an accurate indication of intoxication or that glaucoma itself would cause someone to fail the test. Nor did Vollick show that the State was misleading in pointing out that Vollick was not required to wear glasses to drive.

## ARGUMENT

**Reply Point No. 1**
**(Responsive to Issues 1 & 2)**
**The trial court properly denied a mistrial and properly refused to allow Vollick to poll the jury without any showing that the jury had violated the Court's media instructions.**

### I. Statement of Facts.

At the beginning of trial, the trial court gave the jury the following instruction concerning media coverage:

> The media is an outside influence and we are trying to shelter you, isolate you from all those influences so that you can render your verdict based upon what happens in this courtroom. So, please do not read anything in the print media, Caller.com, or actually the newspaper. And please do not stay in the same room if a radio and/or the T.V. is discussing this case; use the remote, close it, etc. Remember, you will very rarely see a member of the media in the courtroom listening to the facts as you are hearing them. No one has

heard these facts. So the bottom line is everything they are stating is all hearsay, based upon, you know, whatever they are drawing upon. But the key thing is, is your verdict has to be based here and not be influenced by the media, so that is the media instruction.

(RR vol. 4, pp. 12-13)

Later in the guilt-innocence phase of trial, Vollick's attorney moved for a mistrial based on the District Attorney's alleged prosecutorial misconduct in giving an interview in which he supposedly alluded to Vollick's prior criminal record, and the trial court indicated that it would take the matter up later during the trial. (RR vol. 5, pp. 5-7)

When the trial court revisited the issue, it allowed Vollick to play the recorded interview, but then denied the motion for mistrial. (RR vol. 5, pp. 37-41) Although the trial court stood firm in its decision to deny the motion for mistrial, it indicated its willingness to consider any additional evidence that Vollick wished to present at that time and did not specifically deny him the right to call witnesses, as the following exchange shows:

> MR. LAMERSON: Pardon me, Your Honor, might I put on additional evidence?
> THE COURT: Yes.
> MR. LAMERSON: I would just like for the Court to know that we do have a K-Triple-I employee within the jury pool and we also have -- as a jury member, and we also have the editor -- one of the editors of the Caller Times as a jury member. I'd like for them -- to request to ask them if they've seen any media, as it relates to this case. We have two media members on the jury.

THE COURT: What I saw on the video is not the basis for a mistrial, so I am denying it, because I do not find it to be substantive or meritorious on the issue of a mistrial.

MR. LAMERSON: All right. Thank you, Your Honor …

(RR vol. 5, pp. 40-41)  However, Vollick made no attempt at that time to call witnesses or poll the jury.

After the charge conference and just before final arguments on guilt-innocence, Vollick's attorney later re-urged his motion for mistrial and asked to question jurors as to whether they had seen the interview, but the trial court refused to allow questioning at that time.  (RR vol. 5, pp. 48-49)

In the Jury Charge on Guilt-innocence, the trial court specifically instructed the jury not to consider Vollick's prior DWI convictions as tending to prove that he committed the present DWI.  (CR p. 961, Paragraph 3)  The Jury Charge also instructed them that "The defendant has stipulated to having been previously convicted two or more times of an offense relating to the operating of a motor vehicle while intoxicated."  (CR p. 961, Paragraph 5)

In his Motion for New Trial and Arrest of Judgment, Vollick did complain that the District Attorney's statement to the media violated his right to a fair trial and that the trial court erred by failing to poll the jury concerning the effect of that statement.  (CR p. 989)  However, at a hearing on the motion for new trial, Vollick failed to call any witnesses or otherwise

6

attempt to support his argument concerning the District Attorney's statement to the media or its effect on the jury. (RR vol. 7)

## II. Mistrial.

A mistrial is an appropriate remedy only in extreme circumstances for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.* (citing *Ladd v. State,* 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Ocon*, 284 S.W.3d at 884 (citing *Ladd,* 3 S.W.3d at 567).

## III. Prosecutorial Misconduct.

Concerning his claim that the District Attorney made an improper extrajudicial statement concerning Vollick's case in violation of the Texas Disciplinary Rules of Professional Conduct, Vollick concedes that "[t]he District Attorney never specifically refers to Mr. Vollick by name in the aired interview." (Appellant's Brief p. 29) Moreover, he offers nothing more than speculation that the District Attorney would have been aware of how his interview was being integrated into the news story that also contained the news reporter's own coverage of the Vollick case, much less that the District Attorney had any control over how the story would be put

7

together and aired or what implications might be drawn from the proximity of his interview to the coverage of the Vollick trial. In short, Vollick has shown nothing to suggest a Rules violation by the District Attorney.

However, even if Vollick had shown a Rules violation, he failed to show resulting harm.

As the Court of Criminal Appeals has stated, "[a]lthough an ethics rule may be relied upon to show that an alleged violation infringed the complaining party's right to a fair trial or otherwise affected substantial rights, a complaining party's right is not grounded in the disciplinary rule itself. " *Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crim. App. 2005); *see also Henderson v. State*, 962 S.W.2d 544, 553 (Tex. Crim. App. 1997); *House v. State,* 947 S.W.2d 251, 253 (Tex. Crim. App. 1997) (disciplinary rule violations are not, by themselves, grounds for reversal but are the domain of the State bar). The Court of Criminal Appeals has also stated that "[t]he rules should not be used as a tactical weapon … to obtain a reversal of a conviction for alleged disciplinary rule violations by opposing counsel unless the defendant can show the alleged disciplinary rule violations by opposing counsel deprived him of a fair trial or otherwise affected his substantial rights," and that, "if a defendant cannot show actual prejudice

from an alleged disciplinary rule violation by the State, then he will not be entitled to relief on appeal." *House*, 947 S.W.2d at 253.

In the present case, even if he was arguably prevented from showing harm at trial, Vollick had the opportunity to call witnesses to show harm at the hearing on his motion for new trial, but he failed to do so. Accordingly, he has failed to show that the District Attorney's remarks prejudiced him in any way at trial, much less to the extent that he would have been entitled to a mistrial or a new trial. Moreover, to the extent that the jury might possibly have learned through the media that Vollick had been convicted before of DWI, they already knew at guilt-innocence that he had been convicted at least twice before and were instructed not to consider these prior convictions in determining his guilt on the present charge.

## IV. Refusal to Allow Polling at Trial.

Arguably, Vollick waived this complaint by failing to call witnesses at the time the trial court indicated its willingness to hear them, and by failing to make an offer of proof at trial or call the jurors as witnesses at the hearing on motion for new trial. *See* Tex. R. Evid. 103(a)(2).

However, even if he has preserved error, Vollick has failed to show that the trial court abused its discretion in refusing to poll the jury at trial.

A trial court's ruling on a party's request to interview empanelled jurors about media coverage is reviewed under an abuse-of-discretion standard. *See Mays v. State*, 318 S.W.3d 368, 378 (Tex. Crim. App. 2010); *Simon v. State*, 374 S.W.3d 550, 551 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd)

When media coverage potentially prejudicial to the defendant occurs after the jury has been empaneled and sworn, granting the defendant's request to poll the jury "risk[s] exposing the jury to the existence of the article and its contents for the first time." *Powell v. State*, 898 S.W.2d 821, 828 (Tex. Crim. App. 1994). The trial court may properly refuse to poll the jury in order to avoid this risk and to preserve the integrity of the jury. *Id.*; *see also Mays*, 318 S.W.3d at 377-79 (following *Powell*); *Simon*, 374 S.W.3d at 551 (citing *Powell* and *Mays*). One consideration stressed by the Court in both *Powell* and *Mays* was that the trial court had admonished the jury not to read, watch, or listen to media coverage. *See Mays*, 318 S.W.3d at 378; *Powell*, 898 S.W.2d at 828; *see also Simon*, 374 S.W.3d at 552 (noting the presumption that the jurors followed the instructions of the trial court). Another consideration in *Mays* was the lack of any evidence that the jury violated that admonishment. *See Mays*, 318 S.W.3d at 377.

In the present case, in view of the fact that the jury had been admonished not to watch news about the case, and the lack of any evidence that they violated this instruction, the trial court acted within its discretion in refusing to poll the jury at trial.

Vollick's first and second issues on appeal should be overruled.

**Reply Point No. 2**
**(Responsive to Issue 3)**
**The trial court did not refuse to allow Vollick's attorney to question the jury panel concerning range of punishment, nor did the trial court abuse its discretion in its own instructions concerning range of punishment.**

## I. Statement of Facts.

At a pre-trial hearing, the following exchange occurred concerning what the jury panel would be told about the range of punishment:

> THE COURT: Okay. I'm going to tell them the range of punishment for a -- and it's true, is 2 to 10 years.
> MR. LAMERSON: I would object to that, Your Honor.
> THE COURT: Well, then I'm not going to -- they're going -- they have to know.
> MS. RUDDER: They have to be able to consider the full range, Your Honor.
> THE COURT: Uh-huh.
> MS. RUDDER: -- and the full range --
> THE COURT: And the range is 25. All right. I'm going to --
> MS. RUDDER: It's actually life, Your Honor.

(RR vol. 2, p. 15) Vollick's attorney then requested the following:

> MR. LAMERSON: Again, it's been stipulated as to the H.F.O.'s, so I believe the range is going to be properly given to the jury, it's form 25 to 99.

11

(RR vol. 2, p. 16)  After some discussion, the following exchange occurred:

> THE COURT: At that point that's all the jury knows, that this is a D.W.I., third offense, and there is two prior felony -- misdemeanor convictions for D.W.I. That's a 2 to 10, okay?
> MR. LAMERSON: That's correct.
> THE COURT: Now, if I say 25 to life, that's the range of punishment, I'm misleading the jury there.
> MR. LAMERSON: I would disagree, Your Honor, and I would be happy to --
> THE COURT: You better find me case law because there's either going to be an admission of the H.F.O. status in front of the panel, which I don't think you want --
> MR. LAMERSON: No, Your Honor.
> THE COURT: -- then how do we get to 25 years? Am I not misleading the jury at that point, by not telling them that he is H.F.O., and telling them your range of punishment is going to be 25 to life? Isn't that the --
> MR. LAMERSON: My argument would be no, Your Honor.
> THE COURT: Okay. Well, let's find some case law.
> …
> MR. LAMERSON: And -- and I'll -- I'll certainly get you some case law, Your Honor, however, I disagree with that analysis and --
> THE COURT: Okay.
> MR. LAMERSON: -- certainly I cannot see how --
> THE COURT: Hey, you show me the case law, I'm going to follow the case law.
> MR. LAMERSON: Thank you, Your Honor. May I be excused?
> THE COURT: Yes.

(RR vol. 2, pp. 19-21)

However, at the beginning of voir dire, the following discussion occurred as to what the panel would be told about range of punishment:

> THE COURT: But I think the jury needs to know that in a felony D.W.I. it carries a range of punishment of anywhere from 2 to 10

years. And in the case where enhancements have been alleged, that if there is one prior felony conviction, it is 15 to life or --

MS. RUDDER: No, one prior would be 2 to 20; 2 to 10, and then 2 to 20, and then 25 to 99.

THE COURT: On a D.W.I.?

MS. RUDDER: Yes.

MR. LAMERSON: That's absolutely correct, Your Honor.

THE COURT: Well, that's what we are going to tell them.

MR. LAMERSON: Okay.

THE COURT: That's what we're going to tell them, that a felony D.W.I. is a third degree felony, carries a range of punishment of anywhere from 2 to 10 years in the penitentiary. If there is an allegation of a -- one prior felony conviction, then the range of punishment is 2 to 20 years, and if there is an allegation of 2 prior felony convictions, then the range of punishment is going to be 25 years to life.

MR. LAMERSON: That -- that's correct, Your Honor.

THE COURT: That's what I'm going to tell them.

MR. LAMERSON: Go ahead. Thank you.

(RR vol. 3, pp. 7-8) The trial court then instructed the jury as follows:

Mr. Vollick has been charged with the offense of D.W.I., driving while intoxicated, third offense, okay? So let's talk about that, that's the official offense that he's been charged with. And when we say "D.W.I., third offense" it's because the two prior offenses are misdemeanors. In order to invoke the jurisdiction of a felony Court, which is what this Court is, there has to be two priors. If there is only one, it never gets to D.W.I., third offense, okay? So that's what he's been charged with.

The Legislature just doesn't leave it there. That's a third degree felony. … Felony 3 is 2 to 10. … The jury -- I mean, the Legislature doesn't stop there. They say that if you have, for example, a D.W.I., third offense, that's a third degree felony. But if there is a prior felony conviction, then the range of punishment is 2 to 20 years. If there is two prior felony convictions, the range of punishment is 25 years to life or 99 years, okay? Now, nowhere in there does it say you have to give anything. But you have to be able to consider the entire range of punishment, not give it, because nobody can decide what is appropriate punishment at this time because you haven't heard

13

anything, okay?  But as you sit here today, the law that I must commit you to is this: That you will have an open mind and you will follow the law that tells you what the range of punishment is, if Mr. Vollick is found guilty. Any problems with that?

(No audible or visible response from the jury panel.)

(RR vol. 3, pp. 40-41)   During voir dire questioning, the prosecutor said the following:

Now, the law has also devised ranges of punishment. And how it has done that is by priors. For instance, with the D.W.I.'s if you have one prior, it becomes a class A. misdemeanor. For the D.W.I. that we're on here today, if you have two priors, it becomes a third degree felony. In general, if you are charged with a third degree felony and you have one prior felony conviction, the punishment level is increased to a second degree felony, it's bumped up, in other words. So if you have a third degree felony and you have one prior conviction, then that becomes a second degree felony, 2 to 20. If you have two prior convictions, felony convictions, and they came at separate times, then the law says that the minimum punishment becomes 25 years to 99 years or life.  So a third degree felony can be bumped up to having a minimum punishment of 25 years, up to 99 years, by virtue of having those two prior felony convictions.

Does anyone here disagree with that punishment scheme? Number 65, yes, ma'am?

PROSPECTIVE JUROR 65? I just have a question.

MS. RUDDER: Sure.

PROSPECTIVE JUROR 65: Are you talking about any felony conviction or a D.W.I. conviction?

MS. RUDDER: Any felony conviction can bump someone from a third degree felony, if they've – if they have a third degree charge and they have one prior felony conviction, any felony, it becomes a second degree; same as two felonies becoming a minimum of 25, any felony. So who here thinks that's too harsh? I got Number 65, and Number 47, and Number 77. Anybody else?

(No audible or visible response from the jury panel.)

(RR vol. 3, pp. 81-82)

14

## II. Analysis.

By his third issue, Vollick complains that the trial court supposedly refused to allow his attorney to question the jury panel on the minimum range of punishment for a habitual felony offender.

Yet, there is no indication in the record that the trial court refused to allow Vollick's attorney to ask any such question to the jury panel or that it curtailed his voir dire in any manner. Moreover, the prosecutor did in fact question the panel on the 25-to-life punishment range, and got responses from the panel as to whether they believed this was too harsh a punishment.

In addition, with regard to the trial court's instructions at voir dire concerning multiple ranges of punishment, Vollick's attorney raised no objection, but instead affirmatively agreed that the trial court's instructions were correct and to "go ahead" and instruct them accordingly. As a prerequisite to presenting a complaint on appeal, a party must have made a timely and specific request, objection, or motion to the trial court. Tex. R. App. P. 33.1(a)(1)(A).

Moreover, to the extent that his prior objection to the trial court's intention to instruct on the third-degree range alone might otherwise be considered as preserving a complaint for appeal, that objection was clearly abandoned at the time the trial court gave the instruction in question. When

15

the defendant's affirmative statement of "no objection," or like statements, clearly indicate from the record as a whole an intent to abandon any prior objection, this amounts to a waiver of any such complaint on appeal. *See Thomas v. State*, 408 S.W.3d 877, 885-86 (Tex. Crim. App. 2013). In addition, a party may be estopped from asserting a claim on appeal that is inconsistent with that party's prior conduct. *Arroyo v. State,* 117 S.W.3d 795, 798 (Tex. Crim. App. 2003). Vollick's invitation for the trial court to "go ahead" and give the instructions in question clearly waived any prior complaint and estopped him from complaining about those instructions on appeal.

Finally, concerning the merits of Vollick's complaint that the trial court erred by including in its instructions the lesser range of punishment, that lesser range was not necessarily foreclosed by Vollick's stipulation. A trial court has discretion to set aside a stipulation. *Brito Carrasco v. State,* 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Coker v. State*, 405 S.W.3d 356, 364 (Tex. App.—Texarkana 2013, no pet.) (citing *Brito*). Had Vollick later sought to withdraw his stipulation and the trial court granted that request, he might have been facing the lesser range of punishment, and the jury was thus entitled to know what that range was at voir dire and was subject to examination on their ability to consider it.

In addition, as in the analogous context of charge error, the inclusion of a merely superfluous abstract instruction should not result in reversible error, as it should have no effect on the jury's ability fairly and accurately to implement the relevant law as applied to the facts actually proven at trial and as set forth in the application paragraphs of the charge. *See Plata v. State,* 926 S.W.2d 300, 302–3 (Tex. Crim. App. 1996). Likewise, in the present case, even if the jury was initially instructed concerning a third-degree range that would never become applicable to the present offense, they were also instructed concerning the correct range of punishment and told to apply that range in the punishment charge, such that there should be no confusion or error.

Vollick's third issue on appeal should be overruled.

## Reply Point No. 3
### (Responsive to Issue 4)

**The trial court properly denied Vollick's motion for new trial based on a lack of any indication that the State presented misleading evidence at trial.**

## I. Statement of Facts.

Vollick's trial attorney mentioned in his opening statement that Vollick suffered from, among other things, glaucoma, and implied that this would be relevant to his failure to pass the field sobriety tests. (RR vol. 4, pp. 26-27)

17

During direct examination by the State, Police Officer Joseph Rivas testified that he had specialized training in detecting intoxication and in the standard field sobriety tests, and that he was certified in the horizontal gaze nystagmus test. (RR vol. 4, pp. 85-86) Officer Rivas explained that in the HGN test he was looking for a jerking in the eyes, or nystagmus, at maximum deviation that was distinct and sustained, or more than just a tremor, and the onset of nystagmus prior to a 45 degree angle. (RR vol. 4, pp. 127-28) Officer Rivas testified that the HGN test is "generally accepted by the scientific community as an accurate test for intoxication." (RR vol. 4, p. 145) With regard to Vollick, Officer Rivas testified that he had all of the clues to indicate that he had used alcohol or some type of central nervous system depressant. (RR vol. 4, p. 137) Officer Rivas also testified that he observed that Vollick's driver's license was issued in November 2013, and that it contained no restrictions, and specifically nothing regarding his eyes. (RR vol. 4, pp. 92-93)

On cross-examination, the defense elicited testimony from Officer Rivas that Vollick was not wearing glasses, and that Officer Ricas was not aware of medical records showing that Vollick suffered from glaucoma. (RR vol. 4, pp. 170-71) The defense also elicited testimony from Officer

18

Rivas that his training manual did not indicate that glaucoma would affect the HGN test. (RR vol. 4, p. 173)

On re-direct examination, the State elicited testimony from Officer Rivas that he was familiar with the National Highway Traffic Safety Administration Manual, the purpose of which was to create a standardized field testing procedure, and that this manual did not list glaucoma as one of the things that could cause horizontal gaze nystagmus. (RR vol. 4, pp. 203-05)

Police Officer Brett Boyer testified that he was also certified in standardized field sobriety testing. (RR vol. 5, p. 9) On cross-examination, the defense elicited testimony from Officer Boyer that he was not aware that glaucoma could affect the HGN test. (RR vol. 5, pp. 25-26)

In closing arguments, the defense attorney stressed that Vollick was not wearing glasses at the time of the accident (RR vol. 5, p. 54), and that Vollick had mental and physical problems that might have interfered with the field sobriety tests. (RR vol. 5, pp. 56-57, 59)

During the State's closing argument, the prosecutor argued that the defense could have called an expert to connect Vollick's mental and physical conditions to his apparent intoxication (RR vol. 5, p. 64), that there was no evidence that Vollick's eye problems interfered with his driving (RR vol. 5,

p. 65), and that Vollick failed to mention at the scene that he had glaucoma or that he needed glasses. (RR vol. 5, p. 67) The prosecutor also argued that there were no restrictions on Vollick's recent driver's license and specifically nothing that required him to have glasses to drive. (RR vol. 5, p. 67) The prosecutor also stressed that glaucoma is not listed as something that will interfere with the HGN test, and that the defense failed to bring an expert to prove this (RR vol. 5, pp. 67-68), and that Vollick failed to mention glaucoma the day after the accident as a current medical problem. (RR vol. 5, p. 70)

In his Motion for New Trial and Arrest of Judgment, Vollick complained that the State supposedly misled the jury about the non-alcohol-related causes of horizontal gaze nystagmus, and specifically that glaucoma has no effect, and that the State also led the jury to believe that Vollick had no vision problems. (CR p. 989) Vollick attached excerpts of medical records from Coastal Bend Eye Center which appear to contain a prescription for glasses and some form of medication (CR pp. 1009-1010), and another medical record suggesting that Vollick has "primary open angle glaucoma." (CR p. 1014)

At a hearing on his motion for new trial, Vollick failed to call any expert witnesses to explain the nature and extent of Vollick's eye condition,

the effect of the medication, or the nature of primary open angle glaucoma. He did call his trial attorney, who testified that he could not find anyone to testify at trial that the HGN test is affected by glaucoma. (RR vol. 7, p. 25)

## II. Standard of Review.

The trial court's denial of a motion for new trial is reviewed under an abuse of discretion standard. *McQuarrie v. State,* 380 S.W.3d 145, 150 (Tex. Crim. App. 2012).

## III. False Testimony.

The Due Process Clause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly. *Ex Parte Chavez*, 371 S.W.3d 200, 207-08 (Tex. Crim. App. 2012); *Ex Parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011). Testimony is false if, taken as a whole, it gives the jury a false impression. *Chavez*, 371 S.W.3d at 208 (citing *Alcorta v. Texas,* 355 U.S. 28, 31, 78 S.Ct. 103 (1957)).

In addition, to constitute a due-process violation, the record must show that the testimony was material, namely, that there is "a reasonable likelihood" that the false testimony affected the judgment of the jury.

*Chavez*, 371 S.W.3d at 208; *Robbins*, 360 S.W.3d at 459 (citing *United States v. Agurs,* 427 U.S. 97, 103–04, 96 S.Ct. 2392 (1976)).

## IV. Judicial Notice.

Once the validity of a scientific theory or technique has been widely accepted in a sufficient number of trial courts through adversarial gatekeeping hearings, future courts may take judicial notice of the validity of that theory or technique based upon the process, materials, and evidence produced at those prior hearings. *Somers v. State*, 368 S.W.3d 528, 536 (Tex. Crim. App. 2012).  However, as the Court of Criminal Appeals has said, "[w]e have no 'bright line' judicial rule for when a scientific theory or technique becomes so widely accepted or persuasively proven that future courts may take judicial notice of its reliability."  *Id.* at 536 n.30 (quoting *Hernandez v. State,* 116 S.W.3d 26, 29 n.6 (Tex. Crim. App. 2003)).

The Texas Court of Criminal Appeals has taken judicial notice that the scientific theory underpinning the HGN test is sound and that the HGN test, properly administered, is a reliable indicator of intoxication. *Emerson v. State,* 880 S.W.2d 759 (Tex. Crim. App. 1994).

## V. Glaucoma.

In connection with his present claim, Vollick asks this Court to "take judicial notice that glaucoma causes horizontal gaze nystagmus"

22

(Appellant's Brief p. 50), and in turn use this judicially noticed fact to find that the State misled the jury by failing to account for this possibility in its assertions that Vollick's failure of the HGN test showed that he was intoxicated.

Vollick is correct that a number of courts around the country have noted that glaucoma, among other things, *may* cause nystagmus. *See State v. Balbi*, 89 Conn. App. 567, 874 A.2d 288, 294 (2005); *State v. Dahood*, 148 N.H. 723, 729, 814 A.2d 159, 164 (2002); *United States v. Horn*, 185 F. Supp. 2d 530, 556 n.45 (D. Md. 2002); *State v. Ito*, 90 Hawai'i 225, 978 P.2d 191, 196 (Ct. App. 1999); *Schultz v. State*, 106 Md. App. 145, 664 A.2d 60, 77 (1995).

However, whether or not this proposition has reached wide enough acceptance to be judicially noticed in Texas, it fails to carry Vollick far enough to discredit the HGN test and the *Emerson* holding that the HGN test is a reliable indicator of intoxication.

The proposition that glaucoma causes nystagmus does not, in itself, show that glaucoma would cause a person to fail the HGN test. The issue is more complex. As the Illinois Supreme Court has recently explained:

> Nystagmus is "an involuntary, rapid, rhythmic movement of the eyeball, which may be horizontal, vertical, rotatory, or mixed, i.e., of two varieties." Dorland's Illustrated Medical Dictionary 1296 (30th ed.2003). The medical dictionary lists 45 types of nystagmus. For

23

example, ataxic nystagmus is unilateral and occurs in individuals with multiple sclerosis. Dorland's Illustrated Medical Dictionary 1296 (30th ed.2003). Congenital nystagmus "may be caused by or associated with optic atrophy, coloboma, albinism, bilateral macular lesions, congenital cataract, severe astigmatism, and glaucoma." Dorland's Illustrated Medical Dictionary 1296 (30th ed.2003). Gaze nystagmus, which is at issue in the present case, is "made apparent by looking to the right or to the left," as opposed to fixation nystagmus, "which appears only on gazing fixedly at an object," or latent nystagmus, "which occurs only when one eye is covered." Dorland's Illustrated Medical Dictionary 1296 (30th ed.2003).

*People v. McKown*, 236 Ill. 2d 278, 924 N.E.2d 941, 945 (2010).

Accordingly, in order to require the State to account for glaucoma as a possible cause for the defendant to have failed the HGN test, Vollick would at least have to show that glaucoma would cause the particular type of gaze nystagmus in question in a manner that would mimic the alcohol-induced nystagmus that the HGN test detects. He has fallen far short of doing so in the present case.

However, even if such a showing had been made, the prosecutor in the present case merely relied upon the *Emerson* holding to show that Vollick's failure of the HGN test showed his intoxication, and the prosecutor initially said nothing about glaucoma. Vollick's trial attorney himself elicited testimony, on cross-examination of both officers, that suggested glaucoma would not affect the HGN test. The State can hardly be blamed for failing to correct testimony elicited by Vollick's own attorney. Nor is it misleading

24

for the State to fail to affirmatively account for every possible alternative cause for the defendant to have failed the HGN test, no matter how slight or incredible. It should be enough for the State to rely on *Emerson* and let the defense discredit the science or application thereof if it can.

## VI. Poor Vision.

Aside from glaucoma, the only supposedly "false testimony" concerning Vollick's vision came from the prosecutor's development of testimony that Vollick's driver's license did not require him to wear glasses to drive and the implication that it was his intoxication, not poor vision, that caused him to crash into the signs.

Vollick does not contest the truth of the fact that his driver's license does not require him to wear glasses, but only the accuracy of the implication that he could see well enough to drive in spite of the fact that he supposedly had a recent prescription for glasses. With regard to that prescription, however, Vollick failed to bring any expert testimony to show the strength of that prescription, whether it was for near or far vision, and whether lack of glasses would have any significant impact on his ability to drive. Without such testimony, he fails to make a credible claim that the prosecutor's implication is false or misleading.

Moreover, even if he had shown that the nature and strength of the prescription would cast doubt on Vollick's ability to drive without glasses, this would not render the implication of lack of restrictions on his driver's license misleading, but would merely lead to a competing inference that would be fair game for the defense to develop.

## VII. Materiality.

Finally, even if the prosecutor's evidence and arguments concerning the HGN test and/or Vollick's ability to see well enough to drive could arguably be considered misleading, the record fails to show a reasonable likelihood that this evidence affected the verdict. Even excluding the HGN test and the accident, there was strong evidence that Vollick was intoxicated at the time, including his appearance and behavior, his inability to perform the other field sobriety tests, and his own admissions to drinking and the belief that he could "win" if he sat long enough for the alcohol to leave his system.

Vollick's fourth issue on appeal should be overruled.

## PRAYER

For the foregoing reasons, the State respectfully requests that the judgment of the trial court be affirmed.

Respectfully submitted,

/s/ *Douglas K. Norman*
_____
Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 6,308.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman

27

**CERTIFICATE OF SERVICE**

This is to certify that a copy of this brief was e-mailed this 10th day of April, 2015, to Appellant's attorney, Mr. Christopher Dorsey.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman