

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00157-CR

CINQUE ROSS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 43,104-A

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

Following a bench trial, Cinque Ross was found guilty of unlawful possession of a firearm by a felon[1] and sentenced to eight years' confinement in the Texas Department of Criminal Justice Correctional Institutions Division. On appeal, Ross asserts that the trial court erred in not allowing him to withdraw his jury trial waiver and in finding his waiver effective, in failing to suppress the video recording of his custodial interrogation, and in admitting evidence recovered as a result of an invalid search warrant. Ross also asserts that Section 46.04(a) of the Texas Penal Code is unconstitutional as applied to him. We find (1) that Ross effectively waived his right to a trial by jury, (2) that the trial court's refusal to allow Ross to withdraw his waiver of jury trial was not error, (3) that Ross failed to show that Section 46.04(a) is unconstitutional as applied to him, and (4) that Ross failed to preserve his complaints regarding the video recording and search warrant. Consequently, we affirm the judgment of the trial court.

### I.      *Background*

On September 18, 2013, Kilgore police officers executed a search warrant authorizing the search of a house occupied by Ross. There were four people in the house at the time of the search, including Ross, who was located in a blue bedroom. In that same bedroom, the officers found several small baggies containing methamphetamine, four handguns in a closet, ammunition, mail addressed to Ross, and a small amount of marihuana. Ross was arrested and transported to the Kilgore city jail. During a custodial interview, Ross stated that somebody else had placed the

---

[1]*See* TEX. PENAL CODE ANN. § 46.04(a) (West 2011).

2

firearms in the closet. During that same interview, he also told the officer that prior to the search, the firearms were located in a closet in the blue bedroom, that he knew the firearms were in the closet, that he had taken them out of the house to try to sell them, and that his fingerprints would be on the firearms.

## II.   The Jury Trial Waiver

In his first point of error, Ross asserts that the trial court erred in not allowing him to withdraw his jury trial waiver. Ross argues first that there is no evidence in the record showing that the reinstatement of his right to a jury trial would have interfered with the orderly administration of the court, inconvenienced witnesses, or prejudiced the State. In this same point of error, Ross maintains that his jury trial waiver was not made knowingly, intelligently, or voluntarily since it was based on a mutual mistake of fact.[2] The State argues that Ross failed to meet his burden to show that the withdrawal of his waiver would not interfere with the administration of the court's business, inconvenience witnesses, or prejudice the State. The State does not directly address Ross' argument that his waiver was not made knowingly, intelligently, or voluntarily. Before addressing these points of error, we need to set out the procedural background.

---

[2]A multifarious issue is one that raises more than one specific ground of error, as Ross does here. *See In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied). We have repeatedly warned litigants to refrain from raising multifarious points of error. *See, e.g.*, *In re Guardianship of Moon*, 216 S.W.3d 506, 508 (Tex. App.— Texarkana 2007, no pet.); *Newby v. State*, 169 S.W.3d 413, 414 (Tex. App.—Texarkana 2005, pet. ref'd). In the interest of addressing the substantive issues, we will not take the opportunity in this case to overrule this point of error on this basis.

3

### A. Pretrial and Post-trial Hearings

As a result of his arrest, Ross was indicted for unlawful possession of a firearm by a felon in cause number 43,104-A (the Firearms Case) and charged by felony information with possession of a controlled substance in an amount greater than one gram, but less than four grams, a third degree felony[3] in cause number 43,451-A (the Drug Case). At a hearing held on February 14, 2014, Ross waived his right to have a jury trial in each of these cases, both in writing[4] and orally to the trial court.[5] After being presented with written jury trial waivers, the trial court addressed Ross:

> THE COURT: Now, in both of your cases, in the indicted case the unlawful possession of a firearm by a felon and your drug case, you have the absolute right to have a jury trial in each of those cases; do you understand that?
>
> [Ross]: Yes, sir.
>
> THE COURT: All right. Do you wish to have a jury trial in either of those two cases?
>
> [Ross]: No, sir, I don't.

Trial counsel for Ross then informed the trial court of a proposed resolution to the two cases. Ross would be sentenced to six years' confinement in the Drug Case, and the State would dismiss the Firearms Case, along with a state-jail-felony-possession of a controlled-substance charge and another misdemeanor charge. Then the following exchange took place:

---

[3]*See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(c) (West 2010).

[4]The record contains a jury trial waiver signed by Ross and his trial counsel dated February 14, 2014. The waiver also contains the signatures of the State's attorney, evidencing the State's consent to the waiver, and of the presiding judge, evidencing the trial court's approving the waiver.

[5]In this appeal, Ross only appeals his conviction in the Firearms Case.

4

THE COURT:  All right.  Mr. Ross, did you hear that?

[Ross]:  Yes, sir, Your Honor.

THE COURT:  Is that the way you want to resolve all your cases?

[Ross]:  Yes, sir.

THE COURT:  So as I understand it, today you want to give up your right to a jury trial, you've waived indictment, you want to now give up you right to a jury trial in the possession of a controlled substance case; is that correct?

[Ross]:  Yes, sir, Your Honor.

THE COURT:  Come back to court later, enter a guilty plea to that charge under a six-year plea agreement, TDC sentence; is that correct?

[Ross]:  Yes, sir, Your Honor.

THE COURT:  And as a result of that plea agreement on that case then all of these other charges would be dismissed or pleas in bar; is that the agreement?

[Ross]:  That's correct, Judge.

THE COURT:  All right.  Is that the way you want to handle your cases?

[Ross]:  Yes, sir, Your Honor.

THE COURT:  Do you understand if I approve the jury waiver today in both of these cases you can never come back and ask for a jury trial; do you understand that?

[Ross]:  Yes, sir, Your Honor.

THE COURT:  If you change your mind about the plea agreement, if you change your mind about pleading guilty, change your mind about anything[,] these two cases will then be tried to the Court or we'll have open pleas or some non-jury disposition; do you understand?

[Ross]:  Yes, sir, Your Honor.

5

THE COURT: [Defense counsel], do you feel like Mr. Ross fully understands the implications of the jury waivers today?

[Defense Counsel]: Yes, Your Honor, I do.

THE COURT: Have you had adequate time to go over that with him?

[Defense Counsel]: Yes, Your Honor.

After confirming that the State agreed to the jury waivers, the trial court approved the jury waivers and set the matter for a hearing on February 20 to take up the plea agreement in the Drug Case.[6]

After the trial court called both cases for hearing on February 20, 2014, and noted that Ross had waived a jury in both cases, Ross informed the trial court that he did not want to go forward at that time, that Ross wanted to hire new counsel, and that he "potentially [wanted to go] to trial on the indicted case (i.e., the Firearms Case)." He also informed the trial court that he no longer agreed to waive the indictment in the Drug Case. Rather than take up these matters at that hearing, the trial court reset the cases for hearing a couple of weeks later and directed Ross to hire new counsel if he chose to do so.

At a hearing on March 7, 2014, Ross, who was still represented by appointed counsel, informed the trial court that the State had received the laboratory report in the Drug Case, that the actual weight of the drug was under one gram, and that he rejected the State's offer. Although the State made a new offer on the Firearms Case, Ross rejected it as well. Ross also claimed that he was confused and did not understand what he was doing when he waived a jury in the Firearms

---

[6]The Firearms Case had previously been set on the trial court's February trial docket. After accepting Ross' jury trial waivers, the trial court set the Drug Case on the February docket, apparently so that both cases could be heard at the same setting.

Case. The State opposed the withdrawal of the jury waiver, and the trial court denied the withdrawal of the waiver in the Firearms Case. Although Ross protested that he did not know what he was signing and that he was in emotional distress at the time, the trial court found that he knowingly waived the jury in the Firearms Case.

The case proceeded to a bench trial on July 9, 2014, with no further attempt by Ross to withdraw his jury waiver. After his conviction, Ross filed a motion for new trial asserting, *inter alia*, that his waiver of a jury trial was not made knowingly, intelligently, or voluntarily and that the trial court erred in not permitting him to withdraw his waiver. At the hearing on his motion, the prosecuting attorney testified that on February 26, she received the laboratory report in the Drug Case that indicated that the amount of the controlled substance was less than one gram and that the State could not go forward with the plea agreement in the Drug Case since six years would be an illegal sentence.[7] She also testified that she notified Ross' trial counsel at that time and offered Ross a plea agreement in the Firearms Case, which he rejected at the March 7 hearing. The prosecuting attorney agreed that at the February 14 hearing, both the State and Ross understood that the Drug Case involved an amount of methamphetamine that would classify it as third degree felony and that the State's agreement with Ross was based on this mutual mistake of fact. Neither Ross nor his trial attorney testified at the hearing. Ross argued that this testimony showed that the jury trial waiver in the Firearms Case was based on a mistaken understanding of the amount of controlled substance involved in the Drug Case.

---

[7]Possession of less than one gram of methamphetamine is a state jail felony with a maximum punishment of not more than two years in state jail. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(c); TEX. PENAL CODE ANN. § 12.35(a) (West Supp. 2014).

7

**B.      There Was an Effective Jury Trial Waiver**

"A defendant has an absolute right to a jury trial." *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009); *see* U.S. CONST. amend. VI; TEX. CONST. art. I, § 15. A defendant also has the right to waive his right to trial by jury. *See Adams v. United States,* 317 U.S. 269, 275 (1942). In Texas, "the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state." TEX. CODE CRIM. PROC. ANN. art. 1.13(a) (West Supp. 2014). If the validity of the waiver is challenged on appeal, "the State must establish, on the record, a defendant's express, knowing, and intelligent waiver of jury trial." *Hobbs*, 298 S.W.3d at 197 (citing *Guillett v. State*, 677 S.W.2d 46, 49 (Tex. Crim. App. 1984)).

The record shows that all of the requirements of Article 1.13(a) of the Texas Code of Criminal Procedure were fulfilled at the February 14 hearing: Ross waived his right to a jury trial both in writing and in open court, with the consent and approval of the State and the trial court. Before approving the waiver, the trial court asked Ross if he understood that he had a right to a jury trial, and Ross said that he did. When asked whether he wanted a jury trial in this case, he said he did not. Ross assured the trial court that he understood that if the jury trial waiver was approved that day, he could never come back and ask for a jury, even if he changed his mind regarding the plea agreement, or pleading guilty, or about anything else. Ross' trial counsel told the trial court that he had adequate time to explain to Ross the implications of waiving a jury that day and that he felt Ross fully understood those implications. A knowing and intelligent jury trial waiver has been found when the requirements of Article 1.13(a) of the Texas Code of Criminal

8

Procedure are met, and the trial court fully admonishes the defendant regarding his right to trial by jury. *Carr v. State*, 694 S.W.2d 123, 129 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd).

Nevertheless, on appeal, Ross argues that his jury trial waiver was not knowing, intelligent, and voluntary because of the mistaken assumption that the Drug Case involved a third degree felony. Ross likens this to a mutual mistake that allows the parties to a contract to avoid the agreement "when the parties to [the] agreement have contracted under a misconception or ignorance of a material fact," citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). Without deciding whether a mutual mistake of material fact might avoid a jury trial waiver, we hold that Ross has failed to establish that it is applicable in this case.

First, there was never a binding agreement in this case. It is true that a plea agreement is a contract between the defendant and the State. *See Bitterman v. State*, 180 S.W.3d 139, 141–42 (Tex. Crim. App. 2005). However, the agreement is not binding until after the trial court has accepted both the plea bargain and the defendant's plea of guilty or nolo contendere. *See id.* at 142; *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996); *see also* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(2) (West Supp. 2014). No plea was accepted at the February 14 hearing in either of Ross' cases. Although a proposed plea agreement in the Drug Case was discussed, the trial court did not accept the plea agreement on February 14. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(2). Since the plea agreement was not binding, the State could withdraw its offer, or the defendant could withdraw his acceptance, at any time until the trial court accepted the plea and the plea agreement.

9

Further, at the February 14 hearing, the trial court warned Ross that if it approved his jury trial waiver that day, and Ross changed his mind about his plea or the plea agreement, then his case would still be tried to the court. Ross said he understood and persisted in his jury trial waiver. He further demonstrated that he knew the agreement was not binding when, at the February 20 hearing, he informed the trial court that he did not want to go forward with the agreement and might want to go to trial in the Firearms Case. Significantly, this disavowal of the plea agreement occurred almost one week before Ross learned that the methamphetamine at issue in the Drug Case weighed less than one gram.

Finally, neither Ross nor his trial counsel testified that his jury trial waiver was based on a misunderstanding of the amount of controlled substance at issue in the Drug Case. Rather, at the March 7 hearing, after learning of the laboratory report in the Drug Case, Ross only told the trial court that he did not understand what he was signing and that he was under emotional distress. Thus, Ross has failed to show that there was a mutual mistake of material fact that in any way impacted his jury trial waiver.

We find that the record in this case demonstrates that Ross knowingly, intelligently, and expressly waived his right to trial by a jury. We overrule this point of error.

### C. There Was No Error in Denying the Request to Withdraw the Waiver

The trial court's denial of a request to withdraw a jury trial waiver is reviewed under an abuse-of-discretion standard. *Hobbs*, 298 S.W.3d at 198; *Marquez v. State*, 921 S.W.2d 217, 221 (Tex. Crim. App. 1996) (plurality op.); *Coker v. State*, 405 S.W.3d 356, 361 (Tex. App.—Texarkana 2009, no pet.); *Taylor v. State*, 255 S.W.3d 399, 401 (Tex. App.—Texarkana 2008, pet.

10

ref'd). A trial court abuses its discretion when it acts arbitrarily or capriciously or without reference to guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Ordinarily, the trial court should allow the defendant to withdraw his waiver if the withdrawal is in good faith and it will not result in adverse consequences. *Marquez*, 921 S.W.2d at 222. It is the defendant's burden to show an absence of adverse consequences, not the State's. *Hobbs*, 298 S.W.3d at 197; *Marquez*, 921 S.W.2d at 223. To be entitled to withdraw his jury trial waiver, the defendant

> must establish, on the record, that his request to withdraw his jury waiver has been made sufficiently in advance of trial such that granting his request will not: (1) interfere with the orderly administration of the business of the court, (2) result in unnecessary delay or inconvenience to witnesses, or (3) prejudice the State.

*Hobbs*, 298 S.W.3d at 197–98. "If the State, the record itself, or the trial court rebuts the defendant's claim of no adverse consequences, the trial court does not abuse its discretion in denying the motion to withdraw the waiver of jury trial." *Taylor*, 255 S.W.3d at 401 (citing *Marquez*, 921 S.W.2d at 223). Further, when the record is silent, it "does not mean that the state, witnesses, and trial court did not in fact suffer prejudice; it merely means that proof was not offered on the issue." *Marquez*, 921 S.W.2d at 223 n.7; *see Smith v. State*, 363 S.W.3d 761, 770–72 (Tex. App.—Austin 2012, pet. ref'd) (finding defendant failed to carry her burden when record devoid of evidence of any *Hobbs* factors).

As Ross candidly admits, he produced no evidence in the trial court showing that granting his request to withdraw his waiver would not "interfere with the orderly administration of the business of the court, result in unnecessary delay or inconvenience to witnesses, or prejudice the State." *Hobbs*, 298 S.W.3d at 197–98. Rather, on appeal, Ross seeks to shift the burden to the

11

State to show that granting his request to withdraw would result in these adverse consequences by arguing that there is no evidence in the record to show any inconvenience to the State, to the court, or to witnesses. This argument was rejected by the Texas Court of Criminal Appeals in *Marquez*. *Marquez*, 921 S.W.2d at 223 n.7; *see also Smith*, 363 S.W.3d at 771–72.

Since the record in this case is devoid of any evidence that granting Ross' request to withdraw his jury waiver would not "interfere with the orderly administration of the business of the court, result in unnecessary delay or inconvenience to witnesses, or prejudice the State," Ross failed to carry his burden in the trial court. *Hobbs,* 298 S.W.3d at 197–98. Therefore, we cannot conclude that the trial court abused its discretion in denying his request. We overrule this point of error.

### III. Section 46.04(a)(1) is Not Unconstitutional as Applied to Ross[8]

In his fourth point of error, Ross asserts that Section 46.04(a)(1) of the Texas Penal Code, under which he was convicted, is unconstitutional as it was applied to him.[9] He argues that under the Second Amendment to the United States Constitution, he has a right to possess a firearm in his own home, citing *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010), and *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). He claims that Section 46.04(a)(1), as applied to him in this case, infringes upon his right to bear arms since it does not make an exception for

---

[8]Ross' challenge to Section 46.04(a)(1) is not a facial challenge because he does not challenge the statute's application to all convicted felons anywhere, but only to ones, like himself, who possess firearms in their homes. *See State ex. Rel. Lykos v. Fine*, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011) (holding "a facial challenge . . . asserts that there are no factual circumstances under which the statute would be constitutional.").

[9]Ross raised this point both at trial and in his motion for new trial, and the trial court heard argument on the issue at the hearing on his motion for new trial. Thus, this issue has been preserved. *See S.K.A.*, 236 S.W.3d at 887.

possessing a firearm in his own home for defensive purposes. The State argues that Section 46.04(a)(1) has been held constitutional under the provision of the Texas Constitution comparable to the Second Amendment and that *McDonald* and *Heller* are not applicable to statutes restricting the possession of firearms by felons.

A defendant raising an as-applied constitutional challenge asserts that the statute is unconstitutional as applied to his particular circumstances, while conceding the statute's general constitutionality. *State ex rel Lykos*, 330 S.W.3d at 910 (citing *Tex. Workers' Compensation Com'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995)); *S.K.A.*, 236 S.W.3d at 887. When challenging the constitutionality of an application of a statute, the defendant has the burden to "show that in its operation, the challenged statute was unconstitutionally applied to him." *Fine*, 330 S.W.3d at 910. In considering the constitutionality of a statute, we presume that the statute is constitutional. *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983).

Ross cites only *Heller* and *McDonald* as authority for his contention that the Second Amendment protects his right, as a felon, to possess firearms in his own home. In *Heller*, the United States Supreme Court held that the Second Amendment protects the rights of citizens to keep and bear arms for the purpose of self-defense and held unconstitutional a District of Columbia law banning the possession of handguns in the home. *Heller*, 554 U.S. at 635. In *McDonald*, the United States Supreme Court held "that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*," thus making the Second

13

Amendment applicable to the States and their subdivisions.[10] *See McDonald*, 561 U.S. at 791. However, both *Heller* and *McDonald* stressed that the right to bear arms is not unlimited and that "the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626). The United States Supreme Court further limited the right recognized in *Heller* and *McDonald*, emphasizing that

> nothing in our opinion(s) should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626–27; *see also McDonald*, 561 U.S. at 786. Thus, neither *Heller* nor *McDonald* lend support to Ross' proposition. Further, the United States Fifth Circuit Court of Appeals on similar facts, upheld the constitutionality of a federal statute forbidding felons from possessing firearms, which is more restrictive than Section 46.04(a).[11, 12] *See United States v. Anderson*, 559 F.3d 348, 351–52 (5th Cir. 2009), *cert. denied*, 557 U.S. 913 (2009) (defendant may be convicted under federal statute as felon in possession of firearm for possessing firearm in his own home); *see also United States v. Darrington*, 351 F.3d 632, 633–34 (5th Cir. 2003), *cert.*

---

[10]Prior to *McDonald*, courts consistently held that the Second Amendment does not apply to the States or their subdivisions. *See Masters v. State*, 685 S.W.2d 654, 655 (Tex. Crim. App. 1985). Neither party has cited, nor have we located, any Texas appellate opinions addressing whether Section 46.04(a)(1) violates the right to bear arms guaranteed under the Second Amendment.
.

[11]*See* 18 U.S.C.A. § 922(g) (West, Westlaw current through April 7, 2015). Whereas, Section 46.04(a) only forbids possession of firearms by felons for five years after the felon's release from confinement or from supervision, Section 922(g) has no time limitation.

[12]In the absence of contrary authority from the Texas Court of Criminal Appeals, we may be guided by the reasoning of the Fifth Circuit. *See Evans*, 338 S.W.3d at 551–52.

*denied*, 541 U.S. 1080 (2004) (holding 18 U.S.C.A. § 922(g) "does not violate the Second Amendment"). *Anderson* further noted that *Heller* provides no basis for challenging the constitutionality of the federal felon in possession of a firearm statute. *Anderson*, 559 F.3d at 352. Considering the express limitation of *Heller* and *McDonald* by the United States Supreme Court and relevant Fifth Circuit precedent, we find that Ross has failed to show that Section 46.04(a) is unconstitutional as applied to him in this case. We overrule this point of error.

## IV. Ross Has Not Preserved His Other Complaints

### A. The Search Warrant

In his third point of error, Ross asserts that the trial court abused its discretion in finding the search warrant valid and admitting evidence acquired through execution of the search warrant.[13] On appeal, Ross only attacks the supporting affidavit, arguing it does not show the reliability of the confidential informant. The State argues that Ross never asserted this objection to the search warrant at trial and has, therefore, failed to preserve this point of error. We agree.

On appeal, the point of error "must correspond or comport with the objection made at trial." *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998) (op. on reh'g); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)). Under Rule 33.1(a) of the Texas Rules of Appellate Procedure, an issue is not preserved on appeal unless the record shows that it was presented to the trial court "by

---

[13]Officer Joe Chitwood of the Kilgore Police Department testified that he prepared a probable cause affidavit wherein he related information provided to him by a confidential informant. The affidavit alleges that the confidential informant had been in Ross' house within seventy-two hours prior to the affidavit and observed methamphetamine and handguns in the house. Chitwood testified that he presented the affidavit to a Gregg County District Judge who issued the search warrant.

a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). If the objection at trial does not correspond with the issue on appeal, nothing is preserved for review. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); *Wright*, 154 S.W.3d at 241.

At trial, Ross told the trial court in his opening statement that he believed "that the warrant was without probable cause [and] did not particularly describe the property and [that] the four corners of the affidavit[] [did] not set forth probable cause." Further, Ross asked the trial court to "take up those objection[s] to the evidence as it [came] in." When the State offered the search warrant into evidence, Ross objected to the search warrant and the supporting affidavit on the basis that the warrant did "not particularly describe the property of the person to be searched," that it was stale, and that "it also [did] not set forth probable cause in the four corners of the document." As evidence from the search was offered, Ross asserted "the same objections." In his motion for new trial, Ross incorporated the objections raised at trial. There is nothing in the objections made at trial to the search warrant and to the evidence obtained through it that would make the trial court aware that Ross was complaining that the supporting affidavit failed to establish the reliability of the confidential informant. Since Ross' complaint on appeal does not comport with his trial objection, he has failed to preserve this point of error. We overrule this point of error.

16

**B.     The Recorded Custodial Interrogation**

In his second point of error, Ross asserts trial court error in failing to suppress an audio/ video recording of his custodial interrogation. Ross alleges that prior to beginning the recording, the interrogating officer improperly induced him to make a false confession. The State argues that the evidence shows that the trial court did not abuse its discretion in failing to suppress the recording. Since we find that this point of error was not preserved, we need not address the substantive points.

Although the State does not argue that Ross failed to preserve this error, "preservation of error is systemic and must be considered, regardless of whether the issue is raised by the parties." *Flowers v. State*, 438 S.W.3d 96, 106 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012); *Menefee v. State*, 287 S.W.3d 9, 18 (Tex. Crim. App. 2009). Once again, an issue is not preserved on appeal unless the record shows that it was presented to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A); *Clark*, 365 S.W.3d at 339; *Resendez*, 306 S.W.3d at 312. "Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule." *Sample v. State*, 405 S.W.3d 295, 300 (Tex. App.—Fort Worth 2013, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011)). If a defendant has not filed a motion to suppress and obtained a ruling on it, he must make his objection to the evidence

17

before there is any substantial testimony given about it. *Ratliff v. State*, 320 S.W.3d 857, 861 (Tex. App.—Fort Worth 2010, pet. ref'd); *Thomas v. State*, 884 S.W.2d 215, 216–17 (Tex. App.—El Paso 1994, pet. ref'd). Further, "[t]o preserve error, it has been consistently held that one must object each and every time [allegedly] inadmissible evidence is offered." *Long v. State*, 10 S.W.3d 389, 399 (Tex. App.—Texarkana 2000, pet. ref'd) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)). Finally, when a motion to suppress is asserted after the State rests its case-in-chief, it is untimely and preserves nothing for review. *Sample*, 405 S.W.3d at 301. If an issue has not been preserved for review, the appellate court should not address the merits of the issue. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g).

At the trial below, Ross did not file a motion to suppress. He also failed to make an effective objection when the recording was offered into evidence, and he failed to object to testimony regarding the statements he made on the recording. Immediately before trial, Ross stated, "I do want to let the Court know that concomitant with the bench trial we're also doing the Motion to Suppress his statements, the [recording], . . . . we'll take them up as they come into evidence." However, when the State introduced the recording of the custodial interrogation, Ross told the trial court, "Just subject to the objections that we're going to make obviously, Judge, once it's played. I mean, you can't rule on them until you hear it." The trial court allowed the recording to be played[14] and the interviewing officer to testify regarding the statements made by Ross on the

---

[14]Although the trial court never formally stated that the recording was admitted into evidence, both Ross and the State have asserted that it was admitted into evidence. Since the State offered the recorded interview into evidence, the trial court allowed it to be played, and all parties consider it to have been admitted, we also consider it to have been admitted into evidence. *See Pitts v. State*, 916 S.W.2d 507, 509–10 (Tex. Crim. App. 1996); *Godoy v. State*, 122 S.W.3d 315, 320 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

recording, admitting that he possessed the firearms, that he knew they were in his closet, and that he had tried to sell them, all without objection. After the State rested its case-in-chief in the guilt/innocence phase, Ross testified that he only admitted to the guns because the interviewing officer said that was the only way they could help him. No other mention is made of the video or the admissions made by Ross until both parties had rested and closed. In his closing statement, Ross argued that the statements made on the recording were induced by false promises and were not voluntary. This was the first time that Ross articulated grounds for an objection to the statements he made on the recording. However, this objection, made after all evidence had been received and both parties had rested, was untimely and preserved nothing for our review. We overrule this point of error.

We affirm the judgment of the trial court.


Ralph K. Burgess
Justice


Date Submitted:     June 8, 2015
Date Decided:       July 31, 2015

Do Not Publish

19